IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MARSELLEEN LYNNE HOPKINS,

          Debtor.

21ST MORTGAGE CORPORATION,

          Appellant,

v.                              CIVIL ACTION NO.    3:24-cv-0065
                                BANKRUPTCY CASE NO.  3:22-bk-30260
MARSELLEEN LYNNE HOPKINS,

          Appellee.

## MEMORANDUM OPINION & ORDER

21st Mortgage Corporation appeals the Bankruptcy Court's January 24, 2024 Memorandum Opinion & Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendant's Cross Motion for Summary Judgment ("Bankr. Op."). *See* ECF No. 6.

Upon review, the Court **AFFIRMS** the Bankruptcy Court's decision.[1]

## BACKGROUND

### I

In 2000, Marselleen Hopkins purchased a home. *See* Bankr. Op. ¶ 3, ECF No. 1-1. To finance her purchase, she signed a promissory note and mortgage. *See id.* Starting in 2013, 21st Mortgage Corporation serviced the promissory note. *See id.* ¶ 4.

---

[1] The Court considered 21st Mortgage Corporation's Petition for Appeal, ECF No. 6 ("Appellant's Br."); Appellee Marselleen Lynne Hopkins' Response in Opposition of Appellant 21st Mortgage Corporation's Petition for Appeal, ECF No. 7 ("Appellee Br."); and 21st Mortgage Corporation's Reply to Appellee Marselleen Lynne Hopkins' Response in Opposition to 21st Mortgage Corporation's Petition for Appeal, ECF No. 8 ("Appellant's Reply").

In 2016, Hopkins fell behind on mortgage payments. *See id.* ¶ 5. In response, 21st Mortgage purchased the home at a foreclosure sale and obtained legal title to the property. *See id.* 21st Mortgage then sued Hopkins for possession in Putnam County Circuit Court. *See id.*

Eventually, the parties settled their dispute. *See id.* ¶ 7. In November 2020, the Circuit Court issued an Agreed Order Staying Case ("Agreed Order") memorializing the settlement. *See* Pl.'s Mot. Summ. J., Ex. B, ECF No. 4-17. Under the Agreed Order, Hopkins agreed to:

1) immediately pay $3,386.37 to 21st Mortgage ("lump sum");
2) cooperate with 21st Mortgage to obtain hazard insurance covering the home; and
3) make ten monthly payments starting December 20, 2020.

*See id*. at 2. If Hopkins performed, 21st Mortgage agreed to:

1) rescind its foreclosure sale;
2) reinstate Hopkins' loan and Deed of Trust; and
3) capitalize outstanding arrears.

*See id.* at 2–3. Afterwards, both parties promised to file a Final Dismissal Order with the Circuit Court. *See id.* at 3. In sum, both parties promised future performance. *See id.* To foster collaboration, the Circuit Court stayed the case for twelve months. *See id.* at 3.

Trouble soon arose. To make payments, Hopkins sought to withdraw funds from a thrift savings account. *See id.* ¶ 10. Unfortunately, difficulties prevented her from accessing the account. *See id.* As a result, she failed to pay the lump sum and make monthly payments in December 2020 and January 2021. *See id*. Unhappy, 21st Mortgage moved to lift the stay—once in February 2021 and again in April 2021. *See id.* ¶¶ 10, 12.

The Circuit Court denied both motions. *See id.* The Circuit Court emphasized the stay's role in facilitating settlement. *See* Pl.'s Summ. J. Mot. Mem., Ex. C at 1 (explaining the stay "allow[s] for the parties to meet their obligations under the Agreed Order); *id.*, Ex. D (reaffirming the Agreed Order). Accordingly, the Court revised the Agreed Order to give Hopkins a second

chance ("April Orders"). Under the April Orders, Hopkins agreed to:

1) pay the lump sum with interest;
2) pay the December 2020 and January 2021 payments with interest;
3) provide proof of her thrift savings account; and
4) make her May 2021 payment promptly.

*See id.*, Exs. C, D. The Circuit Court did not modify 21st Mortgage's obligations.

Hopkins stumbled again. Although she made timely payments in May and June 2021, *see* Proof of Claim at 4, ECF No. 4-1, Hopkins failed to pay the lump sum, pay the December 2020 or January 2021 payments, provide proof of her thrift savings plan, *see* Pl.'s Summ. J. Mot., Ex. D at 2, or make payments in July, August, or September 2021, *see id.*, Ex. E at 2.

Frustrated, 21st Mortgage moved to lift the stay again. *See* Bankr. Op. ¶ 14. In October 2021, the Circuit Court denied the motion. *See id.* Reaffirming the Agreed Order, the Court gave Hopkins a third chance ("October Order"). Under the October Order, Hopkins agreed to:

1) pay $3,608.96 (covering missed payments from July 2021 through October 2021) ("combined payment");
2) pay $902.24 by November 20, 2021; and
3) pay $902.24 per month "until further [o]rder of the Court."

*Id.* The Circuit Court reminded Hopkins to share proof of her thrift savings account, to pay the lump sum, and to pay the December 2020 and January 2021 payments. *See id.* at 2. The Circuit Court did not modify 21st Mortgage's obligations. *See id.* at 1–2.

Hopkins made the combined payment, the November 2021 payment, and monthly payments from December 2021 through October 2022—the month she declared bankruptcy. *See* Bankr. Op. ¶¶ 15–16; Proof of Claim at 4. She did not pay the lump sum. *See* Bankr. Op. ¶ 17. Citing this issue, 21st Mortgage sought a writ of mandamus from the West Virginia Supreme Court of Appeals directing the Circuit Court to grant 21st Mortgage possession of the home. *See id*. In response, Hopkins filed for Chapter 13 bankruptcy on October 28, 2022. *See id.*

II

During her bankruptcy proceedings, Hopkins filed a Motion for Summary Judgment asking to "assume" the Agreed Order as an "executory contract" under 11 U.S.C. § 365. *See* Bankr. Op. ¶¶ 18, 22. She argued the Agreed Order (as interpreted by the April Orders and the October Order) was a contract under state law and an executory contract under bankruptcy law. *See id.* ¶ 22.

In response, 21st Mortgage filed its own Motion for Summary Judgment. *See id.* ¶ 23. It made three arguments. *First*, Hopkins' home was not an asset of her bankruptcy estate because she had no legal interest in the property. *See id.* ¶ 38. *Second*, the settlement agreement violated West Virginia Statute of Frauds. *See id.* ¶ 43 (citing W. Va. Code § 55-1-1). *Finally*, Hopkins breached the Agreed Order before her bankruptcy petition. *See id.* ¶ 48. This prepetition breach rendered the contract—if it existed—"non-executory" under § 365. *See id.* ¶ 48.

The Bankruptcy Judge sided with Hopkins. Reviewing the Agreed Order, April Orders, and October Order, the Bankruptcy Judge held Hopkins and 21st Mortgage owed "continuing duties of performance" to one another when Hopkins filed her bankruptcy petition. *Id.* ¶ 53. Hopkins agreed to make a lump sum payment and ongoing payments. *See id.* 21st Mortgage agreed to rescind the foreclosure sale and reinstate her loan. *See id.* As such, the Agreed Order and its progeny were an executory contract. *See id.* Hopkins could, therefore, assume the executory contract and hold 21st Mortgage "to its end of the deal." *Id.* ¶ 53.

The Bankruptcy Judge rejected 21st Mortgage's arguments. *First*, Hopkins retained a possessory interest in her home even if she lost legal interest in it. *See id.* ¶ 41. This possessory right entered the bankruptcy estate. *Id.* ¶ 40. *Second*, the Statute of Frauds did not bar assumption. 21st Mortgage prepared the Agreed Order, signed the Agreed Order, and submitted the Agreed Order to the Circuit Court. *See id.* ¶ 47. None of this "r[a]n afoul of the statute of frauds." *Id.*

*Finally*, prepetition breaches do not bar assumption. *See id.* ¶ 51. Instead, debtors often "assume executory contracts provided [] monetary breaches are cured at the time of the assumption." *Id.*

21st Mortgage appealed.

## STANDARD OF REVIEW

A District Court reviews a Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error. *See In re White*, 487 F.3d 199, 204 (4th Cir. 2007). A District Court reviews a Bankruptcy Court's use of equitable powers for abuse of discretion. *See Adams v. Tavenner*, 648 B.R. 800, 813 (E.D. Va. 2023) (citations omitted).

A District Court may "affirm, modify, or reverse" a Bankruptcy Court's "judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

## ANALYSIS

### I

The Bankruptcy Court found the Agreed Order—as "interpreted and modified" by the Circuit Court's subsequent orders—is an executory contract under 11 U.S.C. § 365. Banrk. Op. ¶ 52. 21st Mortgage disagrees. It suggests there is no executory contract in this case. *See* Appellant Br. at 3. This Court sides with the Bankruptcy Court.

Executory contracts play a pivotal role in bankruptcy. Section 365 of the Bankruptcy Code provides a "trustee [or debtor], subject to the court's approval, may assume or reject any executory contract." 11 U.S.C. § 365(a). A contract is executory if the "obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *In re Sunterra Corp.*, 361 F.3d 257, 264 (4th Cir. 2004) (quotation omitted). *Cf. Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019) (quotation omitted) (stating

"executory" means "performance remains due to some extent on both sides").

This lengthy definition simplifies to two points. *First*, both parties must have unperformed obligations when the debtor files for bankruptcy. *Second*, a party's failure to complete its obligations would be a material breach of the contract. *See Matter of Falcon V, LLC*, 44 F.4th 348, 354–55 (5th Cir. 2022) (explaining a contract must satisfy both prongs to be executory); *In re Weinstein Co. Holdings, LLC*, 997 F.3d 497, 504 (3d Cir. 2021) (looking for "one material unperformed obligation as of the bankruptcy petition date"); *In re Sunterra Corp.*, 361 F.3d at 264 (looking for "at least one continuing material duty to the other" at the time petition is filed). What counts as a "material unperformed obligation" is governed by state law. *In re: Weinstein Co. Holdings LLC*, 997 F.3d at 504.

Whether a contract is "executory" or "non-executory" matters. When a contract is executory, the debtor decides whether it is a "good deal for the estate going forward." *Mission Product Holdings, Inc.*, 139 S. Ct. at 1658. If so, the debtor can "assume" the contract, fulfill its obligations, and reap the benefits of the other party's performance. *See id.* If not, the debtor can "reject" the contract and repudiate any further performance. *See id.* For creditors, these choices often mean the difference between "full payment" and a "claim worth only pennies on the dollar." Jay L. Westbrook & Kelsi S. White, *The Demystification of Contracts in Bankruptcy*, 91 Am. Bankr. L. J. 481, 483 (2017). When a contract is not executory, it is left in a "legal limbo" outside § 365's command. *Id.* at 486. *See also In re Sunterra Corp.*, 361 F.3d at 264 n.11 (suggesting non-executory contracts "survive[] the bankruptcy filing unaffected").

Here, Hopkins filed her bankruptcy petition on October 28, 2022. *See* Bankr. Op. ¶¶ 2, 16. At that point, the October Order—interpreting the Agreed Order and April Orders—was in effect. Whether interpreted as a settlement agreement or consent decree, these orders are contracts under

West Virginia law. *See Sanson v. Brandywine Homes, Inc.*, 599 S.E.2d 730, 734 (W. Va. 2004) (settlement agreements); *Blair v. Dickinson*, 68 S.E.2d 16, 18 (W. Va. 1951) (consent decrees).

Under the Orders, Hopkins and 21st Mortgage still owe "at least one material duty" to one another. *In re Sunterra Corp.*, 361 F.3d at 264. Hopkins owes 21st Mortgage ongoing monthly payments of $902.24, proof of her thrift savings account, the lump sum (with interest), and the December 2020 and January 2021 payments (with interest). Pl.'s Summ. J. Mot. Mem., Ex. E at 3–4. In return, 21st Mortgage owes Hopkins a rescinded foreclosure sale, a reinstated loan and Deed of Trust, and capitalized arrears. *See id.* (failing to modify 21st Mortgage's duties under the Agreed Order). Both parties owe the Circuit Court a Final Dismissal Order. *See id.*, Ex. B at 2.

These ongoing obligations are material. Collectively, the Agreed Order, the April Orders, and the October Order seek to "settl[e] the litigation and provid[e] finality and certainty for the parties." *In re Cho*, 581 B.R. 452, 463 (Bankr. D. Md. 2018). If Hopkins fails to perform, 21st Mortgage misses out on monthly payments—even if it acquires the property. If 21st Mortgage fails to perform, Hopkins fears losing her home. Either way, both parties will continue to litigate the possession question—the very reason 21st Mortgage sued Hopkins in the first place. *See* Bankr. Op. ¶ 6. Nonperformance by either party, therefore, deprives the other of their expected benefits under the contract. *See Triple 7 Commodities, Inc. v. High Country Mining, Inc.*, 857 S.E.2d 403, 414–15 (W. Va. 2021) (explaining a material breach "goes to the root, heart, or essence of the contract" by "defeat[ing] the object of the parties in making the contract") (quotation omitted).[2]

---

[2] To be sure, 21st Mortgage's performance follows Hopkins' performance. But the timing of performance is not dispositive in the "executoriness" analysis. *See, e.g.*, *Lubrizol Lubrizol Enter. v. Richmond Metal Finishers*, 756 F.3d 1043, 1046 (4th Cir. 1985) (explaining contingent obligations do not preclude "executoriness" because contingent obligations are "continuing dut[ies] to stand ready to perform" should the contingency occur); *In re Spoverlook, LLC*, 551 B.R. at 487 (describing this majority rule). After all, Hopkins may be excused from performance should 21st Mortgage anticipatorily repudiate the Agreed Order or its progeny. *See id. See also Wood Cnty. Airport Auth. v. Crown Airways, Inc.*, 919 F. Supp. 960, 968 (S.D. W. Va. 1996) (summarizing West Virginia law on anticipatory breach).

B

21st Mortgage sees things differently. It raises four arguments. None persuade.

1

21st Mortgage starts by accusing the Bankruptcy Court of "chang[ing] the character" of the Circuit Court's orders by "improperly divorc[ing]" the recission of the foreclosure sale from the rest of the settlement agreement's terms. *See* Appellant Br. at 6–7. In doing so, the Bankruptcy Court swapped the "obvious" objective of the Circuit Court's orders—a loan modification—for an "incidental" one—rescission of the foreclosure sale. *Id.* at 6.

The Court disagrees. The Circuit Court's orders come from settlement negotiations centered on ending a lawsuit about who possesses Hopkins' home. *See* Bankr. Op. ¶ 6. The "obvious" purpose of the orders is to provide "finality and certainty" on the possession question. *In re Cho*, 581 B.R. at 463. Hopkins gets neither finality nor certainty without rescission. Indeed, without a rescission of the foreclosure sale, Hopkins has no incentive to file a Final Dismissal Order alongside 21st Mortgage. If anything, she has an incentive to keep litigating.

Furthermore, the Bankruptcy Court correctly summarized the Circuit Court's orders to require Hopkins to "make a lump sum payment and ongoing monthly payments in exchange for rescission of the foreclosure and reinstatement of her loan." Bankr. Op. ¶ 53. *See also id.* ¶ 36 (similar). This summary may not capture every nuance of the Circuit Court's orders. But it captures the "spirit of the bargain" the parties struck. *Id.* ¶ 53. Without specific evidence to the contrary, the Court is hard-pressed to find the Bankruptcy Judge misread the Circuit Court's orders.

2

21st Mortgage tries again. It proclaims Hopkins breached the October Order long before her bankruptcy petition. *See* Appellant Br. at 9. Her prepetition breach means the October Order

Case 3:22-bk-30260    Doc 176    Filed 05/16/24    Entered 05/16/24 14:08:00    Desc Main
Document      Page 9 of 17

cannot be executory under § 365. *See id.* 21st Mortgage relies on *In re Murtishi*, 55 B.R. 564 (Bankr. N.D. Ill. 1985)—and its internal citations—for support. *See id.*

The Court is not persuaded. In *Murtishi*, the debtors agreed to sell their home to another party before filing for bankruptcy. *See id.* at 565. Before they filed their petition, the debtors changed their mind and defaulted on their real estate contract. *See id.* In bankruptcy, the debtors wanted to classify the real estate contract as executory and reject it. *See id.* The Bankruptcy Court said no. Although a debtor may file a bankruptcy petition "solely to reject an executory contract," the Bankruptcy Court stressed, "good faith debtors" should find themselves in "no better position under the bankruptcy laws than if they had pursued alternative remedies" in state court (e.g. recission or reformation). *Id.* at 568. Allowing the debtors to reject their breached real estate contract would be "tantamount to sanctioning . . . a treasure trove for" them. *Id.*

*Murtishi* is unhelpful for three reasons. *First*, Hopkins wants to assume her prepetition agreement—not reject it. *See* Bankr. Op. ¶ 18. She is not using bankruptcy to eschew liability for prepetition breaches (if any). Instead, she desperately wants to cure them. *See id.* Or as *Murtishi* might say: Hopkins is not using bankruptcy to create a "treasure trove" for herself. 55 B.R. at 568.

*Second*, *Murtishi*'s holding is "inconsistent" with the plain text of § 365(b) which allows debtors to assume executory contracts provided monetary breaches are cured at assumption. Bankr. Op. ¶ 51 (explaining this "routine" practice). Indeed, prepetition breaches are "the norm, not an obstacle to assumption." *Id.* (quoting 8 *Collier on Bankruptcy* ¶365[2] (16th ed. 2023)).

*Finally*, *Murtishi* mistakes termination for breach. A terminated contract cannot be assumed in bankruptcy. *See In re Spoverlook, LLC*, 551 B.R. at 485 (collecting cases). But a contract is not terminated simply because a debtor defaults or breaches the contract prepetition. *See Wallach v. Smith*, 2017 WL 2957829, at *5 (W.D.N.Y. July 11, 2017) (collecting cases).

All said, it's no wonder most courts reject *Murtishi*. *See, e.g.*, *In re Spoverlook, LLC*, 551 B.R. at 485 (chastising *Murtishi* for "neglect[ing]" the plain text of § 365); *In re Kemeta, LLC*, 470 B.R. 304, 324–25 (Bankr. D. Del. 2012) (explaining *Murtishi* "leads to the absurd result that [a] . . . debtor cannot assume . . . or reject any contract that it has breached pre-petition. Clearly, this cannot be the law."); *In re RLR Celestial Homes, Inc.*, 108 B.R. 36, 45 (Bankr. S.D.N.Y. 1989) (rejecting *Murtishi* and noting "to rule otherwise would contravene the express authorization for curing defaults as expressed in 11 U.S.C. § 365(b)(1)"). This Court joins their collective wisdom.

### 3

21st Mortgage pivots. It argues 11 U.S.C. § 365(c)(2) alone is "enough to support the reversal of the Bankruptcy Court's Order." Appellant Br. at 7. Section 365(c)(2) provides: a trustee "may not assume or assign any executory contract or unexpired lease of the debtor . . . if . . . [the] contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor." Because the Circuit Court's orders are debt financing, 21st Mortgage argues, Hopkins cannot assume them in bankruptcy. *See* Appellant Br. at 6.

21st Mortgage did not raise this argument below. Remember—21st Mortgage raised three arguments below. *First*, Hopkins' home was not an assert of her bankruptcy estate. *See* Bankr. Op. ¶ 38. *Second*, the settlement agreement violated the West Virginia Statute of Frauds. *See id.* ¶ 43. *Finally*, Hopkins' prepetition breach rendered the Agreed Order non-executory. *See id.* ¶ 48. 21st Mortgage failed to cite—or otherwise reference—11 U.S.C. § 365(c)(2) anywhere in its briefing. It concedes it as much in its Reply Brief. *See* Appellant Reply at 5.

Accordingly, the Court refuses to consider whether § 365(c)(2) precludes assumption in this case. *See Gallagher v. Cohen*, 2024 WL 1620784, at *5 (D. Md. Apr. 15, 2024) ("[T]he Fourth Circuit and district courts within its jurisdiction have all but uniformly refused to consider

arguments in bankruptcy appeals that were not raised before the bankruptcy court.").

4

21st Mortgage makes one last pitch. It argues Hopkins had no possessory or legal interest in her home when she filed for bankruptcy. As a result, her home is not an asset of her bankruptcy estate under 11 U.S.C. § 541(a)(1). *See* Appellant Br. at 10–14. The Court disagrees.

When a person files for Chapter 13 bankruptcy, an estate is created. *See* 11 U.S.C. § 541(a). The bankruptcy estate holds "all legal or equitable interests of the debtor as of the commencement of the case." *Id.* § 541(a)(1). If the debtor has a legal or equitable interest in a property when it files for bankruptcy, the property joins the estate. If the debtor loses all legal and equitable interests in a property before filing for bankruptcy, the property does not join the state. *See In re Alexander*, 2014 WL 3511499, at *11 (Bankr. E.D. Va. July 16, 2014) (summarizing this "axiomatic" rule).

Consider three examples. In *In re Perl*, Sholem Perl defaulted on mortgage payments for a California property. *See* 811 F.3d 1120, 1123 (9th Cir. 2016). In response, Bank of America instituted foreclosure proceedings. *See id.* At the foreclosure sale, Eden Place purchased the property and recorded the deed. *See id.* Despite this "legal transfer of title," Perl refused to vacate the property. *See id.* So Eden Place secured a writ of possession in its favor from a California state court. *See id.* Eventually, the local sheriff evicted Perl. *See id.* Perl filed for bankruptcy. *See id.*

The Ninth Circuit refused to allow the property to enter the estate. Perl lost all legal interest in the property when Eden Place purchased the property and recorded its deed under California law. *See id.* at 1128. Perl also lost all equitable possessory rights when the state court entered judgment against her and issued the writ of possession after unlawful detainer proceedings. *See id.* at 1129. Because Perl was "completely divested of all legal and equitable possessory rights" in the property "at the time of the filing of the bankruptcy petition," it could not enter the estate. *Id.*

-11-

Similarly, in *In re Rodgers*, Sandralee Rodgers lost a New York property at a public auction in a tax foreclosure sale. *See* 333 F.3d 64, 65 (2d Cir. 2003) (per curiam). Before the local county recorded the deed and delivered it to the purchaser, Rodgers filed for bankruptcy hoping to prevent the transfer of the deed. *See id.* The Second Circuit allowed the transfer. New York law strips debtors' rights of redemption—alongside any interest in the property—at foreclosure sales whether or not the deed is delivered. *See id.* at 68–69 (summarizing New York law). Rodgers, therefore, had no "legal or equitable ownership interest that survived the auction." *Id.* at 68. *See also In re Cerrato*, 504 B.R. 23, 29–30 (Bankr. E.D.N.Y. Jan. 24, 2014) (reaching similar conclusion).

Finally, in *In re LaPointe*, Robert LaPointe fell behind on mortgage payments for a New Hampshire property. *See* 505 B.R. 589, 591 (1st Cir. 2014). In response, TD Bank, N.A. purchased the property at a foreclosure sale. *See id.* Before the Bank recorded the foreclosure deed, LaPointe filed for bankruptcy. *See id.* The First Circuit held the property could not enter the estate because a foreclosure sale extinguishes a mortgagor's redemption rights under New Hampshire law. *See id.* at 593–94. "[O]nce the auctioneer's hammer fell and the memorandum of sale was signed," the First Circuit held, LaPointe lost all interests in the property. *Id.* (quotation omitted).

West Virginia law is similar. In the Mountain State, a debtor loses redemption rights— alongside all legal and equitable interests—in a property when the foreclosure sale ends. *See In re Bell*, 507 B.R. 898, 906 (S.D. W. Va. 2014) (reviewing West Virginia caselaw to hold a debtor loses her "equitable interest" in a property when "the hammer [is] struck down at a foreclosure sale that takes place before a bankruptcy petition"); *In re Bardell*, 374 B.R. 588, 595 (N.D. W. Va. 2007), *aff'd* 294 F. App'x 47 (4th Cir. 2008) (reaching same conclusion).

Hopkins fell behind on mortgage payments. *See* Bankr. Op. ¶ 5. So 21st Mortgage purchased her home at a foreclosure sale in October 2016. *See id.* Hopkins filed for bankruptcy

in October 2022—six years after the foreclosure sale. *See id.* ¶ 16. If nothing occurred between, Hopkins would be out of luck. *See In re Bell*, 507 B.R. at 906–07.

Luckily for her, a lot happened between October 2016 and October 2022. In October 2016, 21st Mortgage sued Hopkins for possession of her home in Putnam County Circuit Court. *See* Bankr. Op. ¶ 6. But 21st Mortgage never got a writ of possession from the Circuit Court. *See id.* ¶ 17 (describing a failed effort to secure a writ of mandamus from the West Virginia Supreme Court of Appeals). Instead, 21st Mortgage and Hopkins agreed to settle their dispute. *See* Bankr. Op. ¶ 7. Under the settlement agreement, Hopkins promised to act first. *See id.* In return, 21st Mortgage promised to rescind its foreclosure sale, reinstate Hopkins' home loan, and capitalize outstanding arrears. *See id.* ¶¶ 7, 11, 14 (summarizing the Agreed Order, April Orders, and October Order).

Put these promises together and Hopkins has both a possessory and an equitable interest in her home—notwithstanding any foreclosure sale. As to her possessory interest, the parties' settlement and Circuit Court's orders contemplate Hopkins will reside at her home while she makes efforts to secure 21st Mortgage's performance. For example, the October Order states Hopkins does not have to "vacate" her home until twenty days after the Circuit Court enters an order granting possession to 21st Mortgage. *See* Pl.'s Summ. J. Mot. Mem., Ex. E at 3. The Circuit Court never issued this order. *See* Bankr. Op. ¶ 17. As a result, Hopkins retained her right to possession. *See* Bankr. Op. ¶¶ 40–42 (finding 21st Mortgage's "repeated" statements it has a landlord/tenant relationship with Hopkins are "effectively an admission" of Hopkins' possessory interest). This possessory right entered Hopkins' bankruptcy estate when she filed her petition.

As to her equitable interest, if Hopkins performed, she could likely compel 21st Mortgage to transfer legal title to her should they refuse to do so. *See In re Godfrey*, 557 B.R. 469, 473 (Bankr. N.D. W. Va. 2016) (stating a party has "equitable title" if the "holders thereof have in a

-13-

court of equity an equitable chose in action to compel the holders of the legal title to convey")
(quoting *Stebers v. Combs*, 5 S.E.2d 420, 423 (W. Va. 1939)).

21st Mortgage cries foul. They insist Hopkins forfeited any equitable interest in her home by "materially fail[ing]" to comply the Circuit Court's orders. Appellant Br. at 14–15. The Bankruptcy Court disagreed. It found Hopkins "has, and continues to, perform her side of the bargain in good faith" despite "unexpected difficulties" withdrawing funds from her thrift savings plan. Bankr. Op. ¶ 53. The Court finds no error in this conclusion.

Start with the basics. Under West Virginia law, one party is not excused by the other party's breach of contract unless the breach is material. *See, e.g.*, *W. Va. Human Rights Comm'n v. Smoot Coal Co.*, 412 S.E.2d 749, 754 (W. Va. 1991) ("[O]nly a material failure of performance by one party discharges the other."). Said differently: If the breaching party's breach is "slight or did not go to the essence of the contract," the nonbreaching party is not relieved of its duty of performance. *Triple 7 Commodities, Inc.*, 857 S.E.2d at 414.

For 21st Mortgage to win, Hopkins' breaches must go to the "essence of the contract." *Id.* This is where 21st Mortgage stumbles. Under the Agreed Order, Hopkins promised to pay $3,386.37 and make ten monthly payments (from December 2020 through September 2021) of $902.24 for a total of $12,408.77. *See* Bankr. Op. ¶ 7. *See also* Pl.'s Summ. J. Mot. Mem., Ex. C at 3 (adding legal interest to part of this amount). Since the Agreed Order, Hopkins has made approximately twenty-three payments to 21st Mortgage totaling $23,458.79. *See* Bankr. Op. ¶ 20. This is nearly twice the amount needed to spark 21st Mortgage's performance. *See id.* ¶ 7.

21st Mortgage's "working assumptions" are quite different. *Id.* ¶ 54. *First*, it stresses Hopkins failed to pay the lump sum. *See* Appellant Br. at 14. Sure. But Hopkins has paid far more than the lump sum over twenty-three different payments. *See id.* ¶ 20. *Second*, 21st Mortgage

points to Hopkins' failure to provide ten monthly payments in a row. *See* Appellant Br. at 14. Again, no one contests Hopkins faced "unexpected difficulties" making payments at first. Bankr. Op. ¶ 53. Eventually, she found sure footing. She went on to make twelve payments in a row from November 2021 through October 2022—let alone her other payments since the Agreed Order. *See* Proof of Claim, at 4–5. *Finally*, 21st Mortgage emphasizes Hopkins never shared proof of her thrift savings account. *See* Appellant Br. at 15. As the Court sees it, the Circuit Court imposed this requirement to have confidence settlement is possible. It wanted to ensure itself that Hopkins could pay $12,408.77 (plus interest). *See* Pl.'s Summ. J. Mot, Ex. C at 2 (looking for proof Hopkins "has the represented funds available); *id.*, Ex. E at 3 (similar). Her twenty-three monthly payments provide this assurance in spades.

All told, the "discrepancy" between 21st Mortgage's "working assumptions and reality are substantial." Bankr. Op. ¶ 54. 21st Mortgage's promises to Hopkins in the parties' settlement agreement gave Hopkins a possessory and equitable interest in her home notwithstanding the foreclosure sale. *Cf. East Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 823 (4th Cir. 2004) (recognizing court orders may create equitable interests). Hopkins did not lose these interests with her prepetition behavior. As a result, both interests entered her bankruptcy estate.[3]

## II

Without legal arguments, 21st Mortgage quibbles with three factual findings of the Bankruptcy Court. *See* Appellant Br. at 17–20. None of these nits require reversal.

*First*, 21st Mortgage argues the Bankruptcy Court mischaracterized its statement Hopkins paid $900.00 per month under the Agreed Order. *See* Appellant Br. at 17 (referencing Bankr. Op.

---

[3] Because Hopkins substantially complied with the Agreed Order (and its progeny), the Court finds no abuse of discretion in the Bankruptcy Court's decision to hold 21st Mortgage to its end of the bargain. *See* Appellant Br. at 16 (suggesting the Bankruptcy Court improperly "alter[ed]" the parties' relationship).

¶ 54). The Court agrees. When the Bankruptcy Judge asked how much 21st Mortgage received since the last Circuit Court order, 21st Mortgage responded: "I don't have an itemization I can't tell you. I mean, I believe it's somewhere—so I believe—well, maybe [co-counsel] can correct me. Are the payments somewhere in the neighborhood of $900?" *In re Hopkins*, 3:23-ap-3000 (Bankr. S.D. W. Va. Feb. 21, 2024), ECF No. 58-1 at 31:22–32:2. Later, 21st Mortgage estimated the amount Hopkins paid to be $40,600.80. *See id.* at 34:24. It is hard to interpret these statements as a "misplaced belief" Hopkins "paid only $900.00." Bankr. Op. ¶ 54. Even so, the statement—at worst—is a small whisp in a strong breeze. It's not critical to the Bankruptcy Court's or this Court's decision. *See id.* ¶¶ 53–55. *See also supra* Part I. Reversal is, therefore, unwarranted.

*Second*, 21st Mortgage argues the Bankruptcy Court misinterpreted 21st Mortgage's statement it wanted to seek possession for the principle of the thing. *See* Appellant Br. at 17 (referencing Bankr. Op. ¶¶ 26, 54). Not so. In response to whether "21st really want[s] the property more than it wants the payments," 21st Mortgage's counsel responded: "I don't often have clients that take this position, but yes, it's the principle of the thing." *In re Hopkins*, 3:23-ap-3000, ECF No. 58-1 at 32:16–23. This statement speaks for itself.

*Finally*, the Bankruptcy Court incorrectly determined 21st Mortgage admitted the Agreed Order is an executory contract. *See id.* at 20 (referencing Bankr. Op. ¶ 46). The Bankruptcy Court cites 21st Mortgage's Motion to Dismiss. *See* Bankr. Op. ¶ 46. Reviewing its Motion to Dismiss, the Court is hard-pressed to find references to executory contracts—let alone an admission the Agreed Order is one. *See generally In re Hopkins*, 3:23-ap-3000, ECF No. 5. Still, the Bankruptcy Court did not rely on this "admission" in its equity analysis. *See* Bankr. Op. ¶¶ 53–55. In fact, the Bankruptcy Judge only references the "admission" in its Statute of Fraud analysis—an issue 21st Mortgage fails to raise before this Court. *See id.* ¶¶ 44–46.

**CONCLUSION**

The Court **AFFIRMS** the Bankruptcy Court's January 24, 2024 Memorandum Opinion & Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendant's Cross Motion for Summary Judgment. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 8, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE